# Cuban Obligation to Accept Returning Nationals

Under customary international law, one state has a duty to another state to accept any of its own nationals who have been expelled from the other state. This duty between states to accept returning nationals is reinforced by a number of international instruments under which individuals have a right to return to their own country.

Cuba's obligation to accept its returning nationals is intensified by evidence that it violated international law in expelling them in the first place.

June 6, 1980

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This responds to your request for our views, on an urgent basis, on Cuba's obligation to accept the return of Cuban nationals who have been excluded from the United States.

Our examination of authorities indicates that a case can be made that Cuba has a duty to take any of its nationals that we may expel. A leading international law treatise states the obligation quite clearly:

> The duty [of the State] is that of receiving on its territory such of its citizens as are not allowed to remain on the territory of other States. Since no State is obliged by the Law of Nations to allow foreigners to remain within its boundaries, it may, for many reasons, happen that certain individuals are expelled from all foreign countries. The home State of expelled persons cannot refuse to receive them on the home territory, the expelling States having a right to insist upon this.

1 Oppenheim, International Law § 294 (Lauterpacht ed. 1948).

This duty between states is reinforced by a number of international instruments adopted in recent years concerned with the rights of individuals.

In 1948 the United Nations faced this question when the General Assembly adopted, without dissent,[1] the Universal Declaration of Human Rights. Article 13(2) provides:

> Everyone has the right to leave any country, including
> his own, and to return to his country.

G.A. Res. 217A(III), 1948–49 U.N.Y.B. 535–37.

---

[1] Cuba was a U.N. member at that time.

677

Although the Declaration is not a binding treaty, it has frequently been cited as a source of customary international law.

Similarly, two major human rights treaties provide that a national cannot be deprived of the right to enter his own country, the American Convention on Human Rights "Pact of San Jose, Costa Rica," Art. 22.5 [2] and the International Covenant on Civil and Political Rights, Art. 12.4.[3] Cuba is not a party to either; President Carter has signed both and sent them to the Senate but the United States is not a party. Ex. E, 95th Cong., 2d Sess., Ex. F, 95th Cong., 2d Sess., Feb. 28, 1978. The treaties are both in force, however, and have been ratified by a significant number of countries. In such a situation it can be argued that the right to return to a national's own country has been established by customary international law even as to non-parties. *Cf. The Paquete Habana*, 175 U.S. 677 (1900).

Another treaty of possible relevance is the International Convention on the Elimination of All Forms of Racial Discrimination (Ex. C, 95th Cong., 2d Sess.). Article 5 provides that parties undertake to eliminate racial discrimination in all its forms

> and to guarantee the right of everyone, without distinction as to race, colour, or national or ethnic origin, to equality before the law, notably in the enjoyment of the following rights:
>
> *   *   *   *   *
>
> The right to leave any country, including one's own, and to return to one's country.

Cuba became a party to this treaty in 1972. President Carter signed it but the Senate has not approved it. One problem in citing this provision is that the Administration has taken the position that this obligation is not primarily to protect the rights included as such "but rather to assure equality and nondiscrimination in the enjoyment of those rights." Letter of Submittal to the President from Warren Christopher, sent to Senate with Ex. C, 95th Cong., 2d Sess. at VII. Thus, it does not appear that Cuba would violate this treaty unless it discriminated on racial and ethnic grounds in expulsion and acceptance of the return of nationals.

The obligation of Cuba to accept its nationals is intensified by evidence that it violated international law in expelling nationals. There is evidence that some of the persons leaving Cuba, and whom we wish deported, were forced out of Cuba in the first place. The American

---

[2] "No one can be expelled from the territory of the State of which he is a national or be deprived of the right to enter it."

[3] Handbook of Existing Rules Pertaining to Human Rights in the Inter-American System, 29 (1983) (O.A.S. Inter-American Commission on Human Rights). "No one shall be arbitrarily deprived of the right to enter his own country." Official Records of the General Assembly, 21st Sess., Supp. No. 16, 52.

Convention, *supra* (Art. 22(5)), provides that no one can be expelled from the state of which he is a national, as does the American Declaration of the Rights and Duties of Man, Art. VIII. The Declaration is enforceable by the Organization of American States (OAS) Human Rights Commission, which is given its status under the OAS Charter. *See* T. Buergenthal, *The Revised OAS Charter and the Protection of Human Rights*, 69 Am. J. Int'l L. 828 (1975). Despite Cuba's suspension from OAS activities, it is still a member and the United States has taken the position that Cuba is still subject to human rights obligations.

The human rights instruments discussed are basically for the protection of the individual rather than other states. All of them recognize the possibility, however, that states may complain of violations against persons who are not its nationals.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*